National Bank of Commerce .*v.* Greenberg *et al.*

(*Nashville*, December Term, 1952.)

Opinion filed April 25, 1953.

Sam Taubenblatt, of Memphis, for bank.

Abe D. Waldauer, Ben C. Adams, Jr., and Arthur H. Friedman, all of Memphis, for Mrs. Edith Greenberg, Guardian.

Armstrong, McCadden, Allen, Braden & Goodman, of Memphis, for Mrs. Bertha Plesofsky, et al.

MR. JUSTICE GAILOR delivered the opinion of the Court.

This appeal presents a bill, in the nature of an interpleader, filed in the Chancery Court of Shelby County, by the National Bank of Commerce as trustee under the will of Robert Cohen, deceased, for a declaration of its duties under the will, which created a trust for an infant granddaughter, Eleanor, the child of a deceased son of the testator. The Defendants are Mrs. Edith Greenberg, the legal guardian and mother of Eleanor, who takes if the trust is upheld, and the other Defendants with adverse interest, are the three daughters of the deceased trustor, who take under the will if the trust fails as to the granddaughter. The Chancellor decreed that the conditions imposed had been breached and the right of the granddaughter to take the trust fund had been forfeited. This appeal has been perfected in her behalf by her guardian.

Item 4 of the will of Robert Cohen, which established the trust and states its conditions and details, is:

"I give and bequeath to the National Bank of Commerce in Memphis, Tennessee, as Trustee, the sum of Fifteen Thousand ($15,000) Dollars to be invested in legal securities for the use and benefit of Miss Eleanor Cohen, daughter of my deceased son, Fred D. Cohen, said Trustee will invest said sums and add the income therefrom to the trust fund until payment is made to the said Miss Eleanor Cohen. Should the said Eleanor Cohen marry a man of the Jewish faith at any time after she becomes 18 years of age, then and in that event, the entire trust fund shall be turned over to her and the said trust terminated. If the said Eleanor Cohen remains unmarried at the time she reaches her 25th birthday, then one-

half (½) of said trust fund shall be paid to her by the said trustee and the remainder held until she is thirty (30) years of age, at which time the balance shall be paid to her and the trust terminated. Should the said Eleanor Cohen die before said trust fund or any part thereof is turned over to her, then and in that event said trust fund will then be paid to my three children, Mrs. Bertha Plesofsky, Mrs. Laverne Garlove, and Mrs. Zelda Bairner, share and share alike, or to their heirs, and the trust will then terminate.

*"In the event that the said Eleanor Cohen is adopted by any person other than a member of my immediate family, and her name is changed, before she is eighteen (18) years of age, then and in those events, this trust shall terminate and the trust fund will then be paid equally to my three children above mentioned, or their heirs."* (Our emphasis.)

It is stipulated that Eleanor was formally adopted by Herbert J. Greenberg, in the County Court of Cook County, Illinois; that Greenberg is the present husband of Eleanor's mother; that he is not a member of the immediate family of the trustor, Robert Cohen, and that in the decree of adoption, Eleanor's name was formally changed from Eleanor Cohen to Eleanor Cohen Greenberg.

In the brief filed by the guardian on this appeal, this further admission is made:

"It is perfectly obvious that Robert Cohen intended the condition in the last paragraph of Item IV of his will should, to say the least, deter her mother from permitting the child's adoption and change of name by any future husband which she might have. In this sense the condition was simply an *in terrorem* clause. It is also fairly obvious that Robert Cohen

intended that the bequest in trust be forfeited in the event Eleanor Cohen were adopted by a person not a member of the testator's immediate family and her name changed before she attained the age of 18 years. This much of the testator's intentions is clear enough so as to leave very little room for argument.''

The assignments of error make two points which determine the case: (1) That the restraint on adoption, as quoted above from the will, is void as against public policy. (2) That since on account of her infancy, Eleanor could not consent to the adoption, which was, therefore, as to her, involuntary, that she should not be penalized for such involuntary breach of a condition of the trust.

No Tennessee cases have been found which are directly in point on either of these two propositions.

As to the first, we do not find any authority binding on us which justifies an inference that a limited restraint on adoption, such as that expressed in Robert Cohen's will, and disclosed by this record, is contrary to the public policy of Tennessee.

"The meaning of the phrase 'public policy' is vague and variable; courts have not defined it, and there is no fixed rule * * *.'' *Twin City Pipe Line Co.* v. *Harding Glass Co.*, 283 U. S. 353, 357, 51 S. Ct. 476, 477, 75 L. Ed. 1112, 1116.

"In the case of the *Nashville Ry. & Light Co.* v. *Lawson,* 144 Tenn. 78, 87, et seq., 229 S. W. 741, this Court discussed at length, and with the citation of many authorities, the grounds upon which a contract may and may not be held void as violative of 'public policy. From that discussion, it seems clear that the public policy of the State is to be found in its Constitution, its laws, its judicial decisions and the applicable rules of common law. "Public policy' is prac-

tically synonymous with 'public good,' and unless the private contract is in terms of such a character as to tend to harm or injure the public good, public interest or public welfare, or to violate the letter or the spirit of the Constitution, laws, common and statutory, or judicial decisions of the State, it is not violative of public policy nor void on that account.'' *Home Beneficial Ass'n* v. *White,* 180 Tenn. 585, 588-589, 177 S. W. (2d) 545, 546.

■ The provision of a will, or the term of a contract, may be successfully attacked as offensive to public policy, only when such term or provision is detrimental to the public interest or the public welfare or the public good. It must be against ''societal interest,'' in the phrase of the Restatement of Law, Property, IV, Sec. 438.

So, in the present case, if the prohibition against adoption was so arbitrary and absolute that it gave rise to a probability that the result would be to make the child a public charge, it might be argued with reason, that the prohibition was contrary to public policy. We find no such ground for attack upon the limited restriction made a condition in the will before us here.

■ Since it is conceded that the trustor intended that Eleanor should not have the benefit of the trust if, as, and when those events should happen which have admittedly happened, and since the paramount and controlling law in the administration of wills is that the intention of the testator be carried out the intention of the testator is absolutely controlling so long as that intention is not in conflict with some positive rule of law. *Burton* v. *Kinney,* 191 Tenn. 1, 5, 231 S. W. (2d) 356, 357, 19 A. L. R. (2d) 366, the question here is narrowed to whether the conditions imposed are valid, and if so, whether their breach worked a forfeiture on the interest

of the granddaughter in the trust set up under the will.

We must remember that the money was Robert Cohen's money, and he had the absolute right to have it used as he prescribed. It is no part of the judge's duty to pass on the reasonableness or fairness of the disposition he made of it. Compare: *Church of Christ* v. *McDonald,* 180 Tenn. 86, 98, 171 S. W. (2d) 817, 146 A. L. R. 1173.

"But, on the other hand, a man's free control and untrammelled dominion over his own property is equally favored. He should be allowed to prescribe such reasonable conditions to his bounty as his own sense of propriety may dictate. His property is his own, and the bounds of his discretion and power in the disposition of it should not be unnecessarily circumscribed." *Hughes* v. *Boyd,* 34 Tenn. 511, 516.

In our view, the question of adoption might well be pretermitted, it was still necessary that Eleanor's name remain unchanged from Cohen until she was 18, to permit her to take under the trust. There is no question but that such a condition is valid and will be upheld. 69 C. J., 670, Sec. 1773, 57 Am. Jur., Wills, Sec. 1510, *Holmes* v. *Connecticut Trust & Safe Deposit Co.,* 92 Conn. 507, 103 A. 640, L. R. A. 1918E, 368.

It is strenuously argued by Appellant that Eleanor took a vested interest on the death of the trustor, and that the conditions quoted were conditions subsequent. Whether the conditions were precedent or subsequent, is immaterial, in view of the provision of the will that Eleanor would take no beneficial interest until she was 18, and then only if there had been no violation of the condition with regard to adoption and change of name. We are here dealing with a trust created by will, and the law that the testator's will or intention controls, and

the "intention of the testator is to be ascertained, not by subtle and artificial rules of construction, but by the most easy, reasonable and natural reading of the language he has used." Sizer's Pritchard on Wills, Sec. 385. This is another way of saying that Courts will not construe wills by the use of abstruse legal principles and technicalities, but will construe them as would the man in the street from the every-day meaning and effect of the language employed. If the language here created a condition precedent, the Appellant apparently concedes that a breach of condition would defeat the claim, and if the language created a condition subsequent which was clearly expressed and lawful, it must be enforced. *Nolfe* v. *Byrne,* 142 Tenn. 309, 317, 219 S. W. 1.

"The distinction taken in some of the cases between conditions subsequent and precedent does not seem to be very intelligible or satisfactory in its application, and has as often been disregarded as observed in the cases.

"We will not undertake to lay down any general rule on the subject, but content ourselves with deciding that the conditions upon which the estate given to the widow in the case before us was to determine are reasonable and lawful, and must fix and control the rights of the parties. We leave other cases to be decided upon their own facts as they may come up." *Hughes* v. *Boyd,* 34 Tenn. 511, 519-520.

The decison of this case does not necessitate a decision whether the will created a condition precedent or subsequent. The effect upon the minor's enjoyment will be the same whether we hold that her rights were vested upon her grandfather's death, and divested by the deliberate breach of the conditions, or whether we hold that her

rights have never vested, and never can, because of the deliberate breach of those conditions.

"An otherwise effective condition precedent, special limitation, condition subsequent or executory limitation. * * * which is designed to prevent the acquisition or retention of an interest in land or in things other than land in the event of any failure to comply with the terms and conditions expressed therein is valid unless the terms and conditions involve a violation of some rule of law or contravene public policy, in which event the restraint is invalid.

"Impossibility of performance of the terms of a condition precedent, special limitation, condition subsequent or executory limitation, * * * excuses from such performance if, and only if, this result is the judicially ascertained intent of the person imposing the restraint." Restatement of Law-Property IV, Secs. 437, 438, pp. 2546-2549.

It is to be noted that the Restatement considers conditions precedent and subsequent, together, and gives them identical effect. Further, the only excuse for non-performance because of impossibility is the "judicially ascertained" intention of the contractor. Here, "the judicially ascertained" and indeed, admitted, intention of the testator was that non-performance of the condition should not be excused because of impossibility or otherwise.

As to the second point made by the assignments of error, if her grandfather intended that the granddaughter should lose the legacy upon her adoption and change of name, and it is admitted that he did so intend, he realized that these events would occur in her minority, and while she could not legally assent. The Chancellor wrote an excellent opinion, which has come up with the record

and been of material assistance in our decision of the case. We feel that we cannot do better than to adopt a portion of that opinion, as follows:

"In the opinion of this Court, there can be no doubt that interpreting this item of the will according to the testator's intention and with that intention derived from the language of the will itself, that the testator's intention was to provide that the adoption of said child and change of her name before she reached the age of 18 years should have the same effect with reference to his testamentary disposition in her favor as her death prior to that age would have had. So viewed by this Court, the conclusion is inescapable that the inability of the named beneficiary to prevent the happening of the condition which would result in the loss of her legacy made no difference. This conclusion is further justified by the express provision that such happening 'before she is 18 years of age' clearly indicates the contemplation by the testator himself that if such adoption and change of name did occur, it would be while his beneficiary was or might be of tender years and incapable of having any control of the matter. It is apparent to this Court that the testator's wish and intention was that so far as his estate is concerned the adoption and change of name by any person other than a member of testator's immediate family would be the same in effect so far as he was concerned as would be the death of said child and exactly the same disposition over is made, as is made in the event of her death before any part of the trust fund would have been turned over to her.

"The conclusion here reached by this Court results in the loss to an innocent child of a $15,000 legacy

plus accumulated income therefrom and that without any fault on her part but such is the clear intention of the testator. The child cannot be blamed, but certainly, in the opinion of this Court, her mother, before permitting the adoption and change of name, should have obtained, which could easily have been done under our declaratory judgment law, a construction of this will before the event rather than after.''

The assignments of error are overruled and the decree of the Chancellor is affirmed at Appellant's cost.